IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| INFANT DOE, A MINOR, BY HER ) | |
| PARENTS, GUARDIANS, AND ) | |
| NEXT FRIENDS JOHN DOE AND ) | |
| JANE DOE, AND JOHN DOE AND ) | |
| JANE DOE INDIVIDUALLY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:09-CV-93-HEH |
| ) | |
| DISH NETWORK SERVICE, LLC, ) | |
| ECHOSTAR SATELLITE, LLC, ) | |
| ROCKING "R" INTERNATIONAL, ) | |
| INC., AND DONALD WATERS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
(Granting Plaintiffs' Motion to Remand)

Defendants removed the present case to this Court from the Circuit Court for the County of Goochland on February 18, 2009. Plaintiffs subsequently filed a Motion to Remand the case, which asserts only state-law claims, contending that the absence of complete diversity among the parties deprives this Court of federal subject matter jurisdiction. The parties have submitted memoranda of law in support of their respective positions and the Court conducted a hearing on Plaintiffs' Motion to Remand on April 17, 2009. Because Defendants have not carried their burden of establishing federal subject matter jurisdiction, Plaintiffs' Motion will be granted and this case will be remanded to the Circuit Court for the County of Goochland for all further proceedings.

I.

A.

The facts[1] alleged in this case are enough to give any person—much less any parent—pause. In January of 2005, Plaintiff Jane Doe[2] allowed Defendant Donald Waters into her Goochland, Virginia home to service her DISH Network/Echostar satellite television system. At that time, Waters was a technician and installer for Defendant Rocking "R" International, Inc. ("Rocking 'R'"), an authorized distributor, installer, and servicer of DISH Network/Echostar systems.[3] Unbeknownst to Jane Doe, Waters was also a registered sex offender—in 1997 he was convicted in a Virginia state court of taking indecent liberties with a female, school-age child. As a result of his conviction, Waters served both a period of active incarceration, followed by a period of post-release supervision.

Waters' work as a Rocking "R" technician and installer required him to access numerous rooms throughout Jane Doe's home. At Waters' suggestion, Jane Doe placed her young daughter, Infant Doe, in the home's master bedroom so that Waters' installation and service work would not disturb the child. When Jane Doe briefly left

---

1 All facts are taken from Plaintiffs' Complaint and the various exhibits submitted by the parties.
2 Because this case "alleges damages sustained as a result of the sexual assault of a minor", Plaintiffs proceed anonymously and represent that "Defendants are aware of the identities of all Plaintiffs." Compl. ¶¶ 1-2; *see also* Va. Code. Ann. § 8.01-15.1 (permitting "maintenance of [a] proceeding under a pseudonym" under certain, limited circumstances).
3 Plaintiffs have named both DISH Network Service, LLC ("DISH Network") and Echostar Satellite, LLC ("Echostar") as defendants in this action. According to the Complaint, Echostar distributes DISH Network's "video, audio, data, and interactive programming . . . throughout the United States." Compl. ¶¶ 8-9. Rocking "R" apparently contracts with DISH Network and Echostar to install and service their satellite television systems.

2

Infant Doe alone to attend to the family's other young child, Waters entered the master bedroom and sexually assaulted Infant Doe.

After learning of the assault, Jane Doe and her husband notified law enforcement authorities, who investigated the incident and later arrested and charged Waters. Disturbingly, authorities seized a collection of "pornography, sex toys . . . and children's cheap fluorescent toy bracelets" from Waters' work truck upon his arrest. Compl. ¶¶ 19, 32. Waters subsequently was found guilty of Aggravated Sexual Battery following a jury trial in Goochland County Circuit Court. Held without bail following his conviction, Waters ultimately was sentenced to twenty years of imprisonment. *See* Waters Br. Ex. 2. He is currently incarcerated at the Sussex II State Prison in Waverly, Virginia.

In January of 2009, Plaintiffs instituted the present action in the Circuit Court for the County of Goochland, asserting several state law claims against Defendants Waters, Rocking "R", DISH Network, and Echostar. Plaintiffs' claims all stem from the assault on Infant Doe by Waters and the allegedly negligent hiring and retention of Waters by Rocking "R", DISH Network, and Echostar. Joined by all other Defendants, Rocking "R" subsequently removed the case to this Court pursuant to 28 U.S.C. § 1441, relying on diversity of citizenship under 28 U.S.C. § 1332 as the sole basis for federal subject matter jurisdiction.

**B.**

In its Notice of Removal, Defendant Rocking "R" advanced three purported facts

3

in support of its assertion that Waters was a citizen of Maryland prior to his incarceration in 2005. First, Rocking "R" contended that Waters provided a College Park, Maryland address on his application for employment, which he completed just eleven weeks before allegedly assaulting Infant Doe. Next, Rocking "R" indicated that Waters possessed a Maryland driver's license and owned at least one vehicle that was registered in Maryland. And finally, Rocking "R" represented that Waters owned several properties in Maryland as of February, 2005.

Plaintiffs now seek remand of the case to state court, arguing that there is not complete diversity of citizenship among the several parties. Specifically, Plaintiffs contend that the record suggests that they and Defendant Waters were domiciled in—and therefore citizens of—Virginia at the time of his Waters' incarceration, thereby defeating diversity jurisdiction.[4] Defendants respond that their evidence instead demonstrates that Waters subjectively considered himself a citizen of Maryland, not Virginia, prior to his incarceration.[5] Resolution of Plaintiffs' motion thus requires this Court to examine independently Waters' citizenship before he was convicted of assaulting Infant Doe and incarcerated in June of 2005.

---

4 The parties do not dispute that there is diversity among Plaintiffs and Defendants DISH Network, Rocking "R", and Echostar. Thus, the citizenship of Defendant Waters—and its attendant impact on the requirement of complete diversity under 28 U.S.C. § 1332—is the sole disputed issue relevant to the motion at bar.

5 Because domicile is a voluntary status, prisoners typically retain the domicile they had prior to incarceration for the purpose of analyzing diversity jurisdiction under 28 U.S.C. § 1332. *See, e.g., Ownby v. Cohen*, 19 F.Supp. 2d 558, 563 (W.D.Va. 1998). The parties in the instant case do not dispute this point. *See* Pl. Br. at 4, n. 2.

4

## II.

The party seeking removal—here, Defendants—bears the initial burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). Moreover, there is no presumption favoring the existence of federal subject matter jurisdiction, since federal courts are courts of limited—not general—jurisdiction. *Pinkley Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). Because removal of a case from state court implicates "significant federalism concerns", this Court's removal jurisdiction must be strictly construed. *Mulcahey*, 29 F.3d at 151 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)). Accordingly, the Fourth Circuit requires remand of a case to state court if federal jurisdiction is at all "doubtful". *Id.*

Despite these limitations, a defendant may remove a civil action initially filed in state court to a United States district court if "the action could have originally been brought in federal court." *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 754 (4th Cir. 1996); 28 U.S.C. § 1441(a). And a federal district court has diversity subject matter jurisdiction over "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between citizens of different states." 28 U.S.C. § 1332(a)(1). This is the basis of federal subject matter jurisdiction cited by Defendant Rocking "R" in its Notice of Removal.

Section 1441, however, prohibits removal of a case from state court on diversity grounds if any defendant "is a citizen of the State in which such action is brought"—here,

5

Virginia. 28 U.S.C. § 1441(b). Moreover, although not expressly required by the diversity statute, federal courts have interpreted the statutory grant of diversity jurisdiction in Section 1332 to require "complete diversity" of citizenship. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990). Thus, to satisfy the long-standing requirement of complete diversity under 28 U.S.C. § 1332, the "citizenship of each plaintiff [in this case must be] diverse from the citizenship of each defendant". *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

To be considered a citizen of a particular State within the meaning of 28 U.S.C. §1332, an individual must be domiciled within that State. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). Domicile in a particular state in turn requires physical presence in that state coupled with intent to remain there indefinitely. *Granite Trading Corp. v. Harris*, 80 F.2d 174, 176 (4th Cir. 1935). When examining diversity jurisdiction, however, the Court is not bound by a party's declaration that he regards a particular state as his domicile. *Spencer v. Woody*, 212 F.2d 668, 669 (4th Cir. 1954). Instead, the Court may examine the "surrounding facts and circumstances", *id.*, and make an independent determination of a party's domicile based on "all the circumstances of his life." *Texas v. Florida*, 306 U.S. 398, 425 (1939). Mindful of these principles of federal subject matter jurisdiction, the Court now considers Plaintiffs' Motion to Remand.

### III.

Defendants contend that Plaintiffs' evidence fails to establish that Waters changed his domicile from Maryland to Virginia prior to his incarceration in 2005. *See, e.g.*, Water's Br. at 3; Rocking "R" Br. at 3. But Defendants misunderstand their burden, as the parties invoking the removal jurisdiction of this Court, to establish federal subject matter jurisdiction. *See Mulcahey*, 29 F.3d at 151.[6] Because Waters' domicile is at issue, the court must review the record to determine whether Defendants can show that Waters was domiciled in Maryland prior to his incarceration in 2005. *Spencer*, 212 F.2d at 669.

### A.

To establish Waters' domicile in Maryland, Defendants rely heavily on the employment application that Waters submitted to Rocking "R" in October of 2004 in which Waters listed a College Park, Maryland address and stated that he was not willing to relocate for the job. Waters also indicated on the application that he had a Maryland-issued driver's license. *See* Pl. Br. Ex. 2. This employment application, Defendants contend, is highly probative evidence that Waters subjectively considered Maryland to be

---

6 Defendant Rocking "R" cites *State-Planters Bank & Trust Co. of Richmond v. Commonwealth (State-Planters)*, 174 Va. 289 (1940), for the proposition that "it is Plaintiffs' burden to prove that Waters intended to change his domicile to Virginia." Rocking "R" Br. at 3. Even a cursory analysis, however, reveals that *State-Planters* cannot bear the weight that Rocking "R" asks it to carry in this case. As an initial matter, *State-Planters*, a state-court decision with minimal precedential value in this Court, considered the issue of "permanent residence or domicile" in the context of the Virginia state tax laws, not the federal diversity statute. 174 Va. at 291-92. And, more importantly, the court and parties in *State-Planters* assumed that the individual at issue in that case had already established a domicile in Virginia and considered only whether that domicile had changed. *Id.* at 292, 294. Here, the parties dispute whether Waters was ever actually domiciled in Maryland in the first instance. *See* Pl. Br. at 5. Accordingly, Defendants' reliance on *State-Planters* is misplaced. The burden thus remains with Defendants, as the parties seeking removal, to demonstrate that diversity jurisdiction is properly exercised here—i.e. that Waters was domiciled in Maryland, not Virginia, prior to his incarceration. See *Mulcahey*, 29 F.3d at 151.

7

his domicile at least as late as the fall of 2004.

This application, however, is riddled with inaccuracies. The social security number that Waters listed on the application, for example, is incorrect. In the application, Waters also misrepresented to Rocking "R" that he had never been convicted of a felony when, in fact, Waters previously had been convicted in Virginia state court of taking indecent liberties with a child. Pl. Br. Ex. 3 at 13-14, 32. And although Waters stated in the application that his "official residence" was in College Park, Maryland, the affidavit he submitted in connection with this Motion states that "on or about January 16, 2005, and prior thereto, [Waters] considered his official residence to be Baltimore, Maryland" instead. Waters Br. Ex 1.

The inconsistencies and inaccuracies in Waters' employment application seem more consistent with an individual who was actively attempting to obfuscate his identity, perhaps to hide his status as a registered sex offender. The misinformation provided by Waters, a convicted felon, in his employment application is therefore entitled to little, if any, persuasive value in establishing a Maryland domicile.

Defendants also point out several statements in an affidavit submitted by Waters as evidence of his Maryland domicile. Waters first claims that he possessed a Maryland driver's license in January of 2005. Waters' Br. Ex. 1 at 2. Waters fails to mention, however, that he simultaneously possessed a Virginia identification card—issued in 2002 and valid through early 2007—that listed a post office box in Richmond, Virginia as his

8

address. *See* Pl. Br. Ex. 4. Waters also claims in his affidavit that he owned a pickup truck and a motorcycle that were registered in Maryland, not Virginia. Defendant, however, provides no registration documentation to support this claim. Moreover, Plaintiffs have submitted evidence suggesting that these vehicles, though registered in Maryland, were physically kept at the home Waters maintained with his fiancé in Virginia. *See* Pl. Br. Ex. 8 at 24-25.

As further evidence of his alleged Maryland domicile, Waters' affidavit also references "about eight residential properties in Maryland" that he allegedly owned. Waters Br. Ex. 1 at 2. Despite Waters representation, these properties actually were owned by three Virginia business entities of which Waters was, until his arrest for assaulting Infant Doe, the sole owner. Pl. Br. Ex. 3 at 90-97. And Plaintiffs have submitted numerous bills, invoices, and letters that relate to these properties, all of which were mailed by various vendors to Waters at the same Richmond, Virginia address listed on his Virginia identification card. *See* Pl. Br. Ex. 10-11. These exhibits thus suggest that although Waters' companies apparently owned several properties in Baltimore, Maryland, Waters managed them from Richmond, Virginia as late as January, 2005—just weeks before the alleged assault of Infant Doe. *See, e.g.*, Pl. Br. Ex. 10.

Waters, of course, asserts in his affidavit that he subjectively "considered himself a citizen of the State of Maryland" and denies ever making "a conscious decision to abandon Maryland as a domicile". Waters Br. Ex. 1 at 2. But this Court is not bound by

9

Waters' declaration that he considered Maryland to be his domicile—especially when such a statement is at odds with the evidence of Waters' extensive, continuing business and personal contacts with Virginia submitted by Plaintiffs. *See Texas v. Florida*, 306 U.S. 398, 425 (1939); *see also* Part III-B, *supra* (discussing Plaintiffs' evidence). Despite Defendants' arguments, careful analysis reveals that their evidence does not show conclusively that Waters was domiciled in Maryland prior to his incarceration for assaulting Infant Doe in 2005.

**B.**

Even if the Court accepts Defendants' tenuous argument that Waters previously was domiciled in Maryland, Plaintiffs' evidence strongly suggests that he switched his domicile to Virginia well in advance of his incarceration in 2005. Perhaps most indicative of Waters' Virginia domicile at the time of his incarceration are his own admissions. In 2004, for example, Waters signed a Virginia Department of State Police "Sex Offender and Crimes Against Minors Registration Form" acknowledging his various duties under Virginia law as a convicted sex offender. This registration form lists the same Chester, Virginia home where Waters admittedly resided with his fiancé as his "Physical Home Street Address". *See* Pl. Br. Ex. 18. In February of 2005, Waters also executed a notarized power-of-attorney form in which he declared, under oath, that he was residing in Chester, Virginia. Pl. Br. Ex. 12. Waters' own statements in both legal documents thus suggest that he considered Virginia, not Maryland, to be his "home" as

early as 2004.

Plaintiffs have also submitted the affidavit of Ms. Lisbeth A. Lang, an individual who reports that she previously had a "close personal relationship" with Waters. Pl. Br. Ex. 5. According to Lang, Waters continuously resided at her Richmond, Virginia home from May of 2001 through January of 2003 and again from August of 2003 through May of 2004. Pl. Br. Ex. 5 at 2. Lang further represents that she assisted Waters with his "management of rental homes" in Baltimore, Maryland during this period. *Id.* Lang's contention that Waters lived in Virginia while managing his Maryland rental properties is buttressed by the voluminous correspondence relating to these properties that Plaintiffs have provided, all of which was mailed to Waters over several years at a Richmond, Virginia address. Pl. Br. Ex. 10-11. Moreover, as discussed previously, Waters himself admits that these Maryland properties were actually owned by Virginia corporate entities of which Waters was the sole shareholder. Pl. Br. Ex. 3 at 90-97.

In addition to his business dealings, Waters' personal circumstances also suggest that he was domiciled in Virginia prior to his incarceration in 2005. A native of Richmond, Waters admittedly resided with his fiancé and their child at a home in Chester, Virginia at the time of his incarceration. Waters provided this same Chester, Virginia address to Suntrust Bank, where he maintained a personal checking account. *See* Pl. Br. Ex. 14. Waters also sought and obtained medical treatment in the Richmond area in early 2004. Pl. Br. Ex. 15. And Waters seems to have used a telephone number with a central

11

Virginia area code to communicate with potential employers such as Defendant Rocking "R". Pl. Br. Ex. 2.

Considered together, the exhibits submitted by Plaintiffs demonstrate a substantial and continuing connection between Waters and the Richmond, Virginia area. In contrast to the evidence submitted by Defendants, which shows only a minimal connection between Waters and Maryland, Plaintiffs' exhibits portray Waters as an individual whose personal and professional affairs were centered in and around Richmond, Virginia prior to his incarceration in 2005. Viewed against Plaintiffs' substantial evidence to the contrary, Waters' contention that he subjectively considered Maryland to be his domicile is simply not credible. Thus, even if Waters was domiciled in Maryland at some point, Plaintiffs' evidence suggests that Waters had switched his domicile to Virginia by early 2005.

## IV.

Examining all of the facts and circumstances of Waters' life, the Court finds it likely that Waters was domiciled in Virginia prior to his incarceration in 2005. Subject matter jurisdiction is therefore doubtful because the presence of Waters as a defendant in this action likely violates the long-standing requirement of complete diversity under 28 U.S.C. § 1332. His status as a Virginia citizen also likely prevents removal of this action to this Court from Virginia state court under the terms of the federal removal statute. *See* 28 U.S.C. 1441(b) (preventing removal of all non-federal question cases if any defendant "is a citizen of the State in which such action was brought"). Considering the Fourth

Circuit's admonition to construe removal jurisdiction narrowly, this case must be remanded because subject matter jurisdiction is doubtful at best. *See Mulcahey*, 29 F.3d at 151

An appropriate Order will accompany this Memorandum Opinion.

                                                 /s/
                                  Henry E. Hudson
                                  United States District Judge

ENTERED this 22 day of April, 2009.
Richmond, VA